IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs April 9, 2024

**STATE OF TENNESSEE v. LARRY E. OROZCO**

**Appeal from the Circuit Court for Rutherford County**
**No. F-72737B          Barry R. Tidwell, Judge**

_____

**No. M2023-00874-CCA-R3-CD**

_____

The Defendant, Larry E. Orozco, was originally convicted of two counts of attempted second-degree murder, two counts of unlawful employment of a firearm during an attempt to commit a dangerous felony, and seven counts of reckless endangerment committed with a deadly weapon, for which he received an effective sentence of thirty-one years' imprisonment. This court affirmed his convictions on direct appeal; however, appellate review of his sentence was waived because the record did not include the sentencing hearing transcript. The Defendant subsequently filed a post-conviction petition alleging ineffective assistance of counsel, and the trial court granted a delayed appeal. The Defendant now challenges the consecutive nature of his sentence and contends the trial court erred in finding that he was a dangerous offender, see Tenn. Code Ann. § 40-35-115(b)(4), and in failing to make the necessary findings pursuant to State v. Wilkerson, 905 S.W.2d 933 (Tenn. 1995). Upon our review, we detect clerical errors in the judgments and remand for entry of corrected judgments in counts 10, 11, 12, 16, 17, and 19. In all other respects, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed;**
**Remanded for Entry of Corrected Judgments**

CAMILLE R. MCMULLEN, P.J., delivered the opinion of the court, in which JILL BARTEE AYERS and MATTHEW J. WILSON, JJ., joined.

John S. Colley, Columbia, Tennessee (on appeal) and W. Scott Kimberly, Murfreesboro, Tennessee (at trial) for the appellant, Larry Estrella Orozco.

Jonathan Skrmetti, Attorney General and Reporter; Brooke A. Huppenthal, Assistant Attorney General; Jennings H. Jones, District Attorney General; and John Zimmerman and Eric Farmer, Assistant District Attorneys General, for the appellee, State of Tennessee.

**OPINION**

The direct appeal contains an extensive review of the facts and circumstances of this case, see State v. Orozco, No. M2017-00327-CCA-R3-CD, 2018 WL 2372197, at *1-5 (Tenn. Crim. App. May 24, 2018), and we will provide only a brief summary here for context. On September 6, 2014, the Defendant and his accomplice approached Rene Chavez, Sr. during a family party in his backyard, reached for a gun, and attempted to rob him. As the Defendant did so, Chavez, Sr. punched the Defendant. The Defendant and his accomplice then began shooting at the party attendees and shot Chavez, Sr. in the back and his son in the knee. Between six to ten gunshots were heard, and several bullet holes struck the cars at the party. Chavez, Sr. and his son identified the Defendant as the shooter on the night of the offense and at trial. Several parents of the named minor victims in the reckless endangerment indictments testified regarding their attempts to protect their children and identified the Defendant as the shooter at the party. Two guns were recovered from the back of a toilet in the apartment where the Defendant was apprehended. Several of the shell casings recovered from the scene matched the guns recovered from the apartment.

Before the sentencing hearing, the State and the Defendant filed sentencing memorandums for the court. The State sought to enhance the Defendant's sentence based on being a leader in the commission of an offense involving two or more criminal actors; the offense involved more than one victim; a victim of the offense was particularly vulnerable due to age; the personal injuries inflicted upon or the amount of damage to property taken from the victim was great; the defendant possessed or used a firearm during the commission of the offense; and the defendant had no hesitation about committing a crime when the risk to human life was high. See Tenn. Code Ann. § 40-35-114(2), (3), (4), (6), (9), (10). The State also moved the court to impose consecutive sentencing in this case because the Defendant had been convicted of more than one criminal offense and the Defendant was a dangerous offender whose behavior indicated little or no regard for human life and no hesitation about committing a crime when the risk to human life is high. See id. § 40-35-115(b)(2), (4).

In response, the Defendant argued his sentence should be reduced based on several mitigating factors: specifically, that he acted under strong provocation upon being struck by Chavez, Sr., he played a minor role in the offense, his youth, no sustained intent to violate the law, and the catchall mitigating factor. See id. § 40-35-113(2), (4), (6), (11), (13). The Defendant also addressed each of the State's enhancement factors in detail and argued none of them applied except that the offense involved minor victims. In regard to consecutive sentencing, the Defendant argued, pursuant to Wilkerson, that he was not a dangerous offender because he did not have a history of repeated engagement in criminal conduct, nor was he on probation or parole at the time of the offense. The Defendant

emphasized his lack of criminal history as proof that an extended sentence was unnecessary to protect the public.

On March 18, 2016, the trial court conducted a sentencing hearing. The presentence report was admitted into evidence without objection and showed that the Defendant was twenty years old, with no prior criminal history, and a member of "the Rollin' 60 Crip Gang." He graduated from high school and resided with his mother and stepfather in Smyrna, Tennessee. He self-reported his mental and physical health as "excellent"; however, in 2011, he would frequently drink alcohol to excess, and in 2014, he smoked marijuana daily. The Defendant had never been in a treatment program. The Defendant's last job was in 2014 for Randstad Temporary Employment Services as a general laborer.

Rene Chavez, Jr. testified that he had not been the same since the night of the shooting. He said his daughter and his wife were traumatized by the shooting and panicked whenever someone knocked at the door. Two bullets from the shooting remained in his body and "hurt pretty bad." Chavez, Jr. experienced pain if he walked for more than two or three hours. Chavez, Sr. testified that "every day when I look at myself in the mirror, I look at all the scars that I am left with." He said a bullet remained in his leg, which was painful. He had more than $150,000 in medical bills as a result of his injuries during the shooting.

Cedric Maldonado, father of a named minor victim of reckless endangerment, testified that his daughter was two and a half years old at the time of the shooting. His daughter is now unable to stay outside very long and runs inside every time a car passes by their home. His wife is afraid to go outside and is paranoid in public places.

Herrod Castro, the father of a named minor victim of reckless endangerment, testified that his daughter was eight years old at the time of the shooting. His daughter can no longer look at police or an ambulance without crying. His younger daughter, who had also been at the party at the time of the shooting, can no longer go to the bathroom by herself. His children sleep with the lights on at night, and his wife is afraid to drive at night.

Leslie Meza Aguilar, mother of a named minor victim of reckless endangerment, testified that her two children were in the backseat of a car "right beside the van and the Jeep that got shot at." Her car was between the other cars. Her children were affected by the shooting in that they always ask questions when they see police lights and think something is wrong. She said her children will never forget that night. Her oldest daughter no longer wants to attend school or participate in outside activities.

Raul Sanchez, father of two named minor victims of reckless endangerment, testified that his children were seven and two at the time of the shooting. They were inside a car with their mother, and shots were fired into their car. He said his older child did not want to go to the bathroom alone. Regarding his younger child, he recalled a bullet "was a very short distance from her head." The parents of A.C., his eight-year-old nephew, did not appear in court at sentencing because they were afraid. Of all the minor children present at the shooting, A.C. was the most impacted. Sanchez described an event during which A.C. did not see his father and started crying. Sanchez described Chavez, Sr. as a hero because had he not intervened with the shooter, things may have been a lot worse.

The Defendant testified that on the night of the shooting he was "18, you know. I was young. And I liked to party." He said he had been drinking and had taken "like seven Xanax[.]" He "would black out" and "did not remember some things and then [he] remember[ed]" some things." The Defendant explained the circumstances leading up to the offense as follows:

> So, I remember that night I had came out of the apartment with my friend. And we was just sitting around talking. And my friend asked my other friend like where is some parties at. And one of them had said there was a party across the street. So, my friend asked me, you trying to go down there and see what the party is talking about, like, what's going on.
>
> I was like, I mean, yeah. You know, we weren't trying to start no trouble nothing like that. So, when we went, my home boy, my friend said, you know, you go ask. And I asked them where is the party at. And then dude had told me, you know, it was private property and all that.
>
> So, I turned around. And we was walking out. And when we was walking out, I don't remember too much of the conversation. And then that's when dude hit me and I had fell. When I fell, I heard some shots fired. So, I had got up and I fired two times into the ground. And then I ran away.

The Defendant said he was not trying to hurt the victims, apologized for the events that night, and accepted responsibility for the crimes.

Before sentencing the Defendant, the trial court advised the parties that it had considered their briefs and arguments. It incorporated the presentence report and the relevant sentencing principles into its findings and noted that a written order would follow its oral findings of fact, which included, in relevant part, the following:

The risk of physical injury to the victims by the Defendant's criminal conduct was exceptionally high. This factor does not apply to counts 1 and 2 where the intent to kill is an essential element of the crime.

Testimony revealed that one bullet struck within 5 inches of a small child. Several other bullets struck automobiles containing small children and their parents. The use of a firearm is an element of each of Counts 3 through 11. Therefore, the mere use of a firearm is not an enhancement factor for those counts.

The callous disregard for human life does weigh heavily against the Defendant as a violent dangerous offender. The [c]ourt does consider this factor in evaluating the Defendant as a violent offender.

The [c]ourt finds the Defendant is a violent offender whose behavior indicates an indirect disregard for human life. Discharging a weapon in close proximity to multiple victims shows a complete disregard for life.

To belabor the obvious, he shot a 9 millimeter Glock into a group of people minding their own business at their home.

. . . .

Mandatory minimum sentences and mandatory consecutive sentence imposition are mandated by [T.C.A § 39-17-1324(e)(2)] for counts 3 and 4.

The [c]ourt finds by a preponderance of the evidence that the Defendant Orozco is a dangerous offender whose behavior clearly unequivocally indicates he has little or no regard for human life and no hesitation about committing a crime for which the risk to human life is high.

Consecutive sentencing is appropriate and warranted.

The trial court imposed an effective sentence of thirty-one years of confinement, as reflected in the below chart.[1]

| Count One | Att. Second-degree Murder | Renee Chavez, Jr. | Nine Years |
| --- | --- | --- | --- |

---

[1] The State dismissed several counts in the indictment following the presentation of proof, and the trial court renumbered the counts submitted to the jury. The counts in the chart are consistent with those in the judgment forms.

| Count Two | Att. Second-degree Murder | Renee Chavez, Sr. | Nine Years; consecutive to count three |
| Count Three | Employing Firearm/Dangerous Felony | Att. Second-degree murder | Six Years consecutive to count one |
| Count Four | Employing Firearm/Dangerous Felony | Att. Second-degree murder | Six Years consecutive to count two |
| Count Six | Reckless Endangerment/Deadly Weapon | Minor Victim A.M. | One Year consecutive to count four |
| Count Ten | Reckless Endangerment/Deadly Weapon | Minor Victim X.C. | One Year/concurrent with count five |
| Count Eleven | Reckless Endangerment/Deadly Weapon | Minor Victim C.A. | One Year/concurrent with count five |
| Count Twelve | Reckless Endangerment/Deadly Weapon | Minor Victim J.A. | One Year/concurrent with count five |
| Count Sixteen | Reckless Endangerment/Deadly Weapon | Minor Victim P.S. | One Year/concurrent with count five |
| Count Seventeen | Reckless Endangerment/Deadly Weapon | Minor Victim V.S. | One Year/concurrent with count five |
| Count Nineteen | Reckless Endangerment/Deadly Weapon | Minor Victim A.C. | One Year/concurrent with count five |

On April 4, 2016, the trial court issued a written order detailing its findings of fact from the sentencing hearing. In evaluating enhancement factor (10), whether the Defendant had no hesitation about committing a crime when the risk to human life was high, the trial court noted:

> The Defendant showed no hesitation to commit felonious acts when the risk of serious injury to human life was high. The Defendant and another person, for whom the Defendant was criminally responsible, intentionally discharged a firearm, seriously injuring two victims by indiscriminately shooting into an area where young children and their parents were present. The risk of physical injury to the victims by the Defendant's criminal conduct was

exceptionally high. This factor does not apply to counts one and two where intent to kill is an element of the crime.

Testimony revealed that one bullet struck within five (5) inches of a small child. Several other bullets struck automobiles containing small children and their mother. The use of a firearm is an element of each of counts three through eleven; therefore, the mere use of a firearm is not an enhancement factor for those counts. **The callous disregard for human life does weigh heavily against the Defendant as a violent, dangerous offender. The [c]ourt does consider this factor in evaluating the Defendant as a violent, dangerous offender.** (emphasis in original).

## ANALYSIS

Counts three and four of the Defendant's sentence are mandated by statute to be served consecutively to counts one and two. See Tenn. Code Ann. § 39-17-1324 (e)(1) (noting that a sentence imposed for a violation of subsection (b) shall be served consecutive to any other sentence the person is serving at the time of the offense or is sentenced to serve for conviction of the underlying dangerous felony). Thus, the Defendant's sentencing challenge pertains only to the partial consecutive alignment of the remaining counts of his sentence. The extent of the Defendant's argument is that "the trial court failed to make sufficient Wilkerson findings" and that "the Defendant was illegally sentenced as a dangerous offender."

"[T]he abuse of discretion standard, accompanied by a presumption of reasonableness, applies to consecutive sentencing determinations." State v. Pollard, 432 S.W.3d 851, 860 (Tenn. 2013); see State v. Bise, 380 S.W.3d 682,708 (Tenn. 2012); State v. Caudle, 388 S.W.3d 273, 278-79 (Tenn. 2012). "[T]he presumption of reasonableness . . . giv[es] deference to the trial court's exercise of its discretionary authority to impose consecutive sentences if it has provided reasons on the record establishing at least one of the seven grounds listed in Tennessee Code Annotated section 40-35-115(b)[.]" Pollard, 432 S.W.3d at 861. "[A]ny one of these grounds is a sufficient basis for the imposition of consecutive sentences." Id. at 862 (citing State v. Dickson, 413 S.W.3d 735, 748 (Tenn. 2013)). "So long as a trial court properly articulates reasons for ordering consecutive sentences, thereby providing a basis for meaningful appellate review, the sentences will be presumed reasonable and, absent an abuse of discretion, upheld on appeal." Id. (citing Tenn. R. Crim. P. 32(c)(1); Bise, 380 S.W.3d at 705)). However, two additional findings must be made when a trial court imposes consecutive sentencing based on the dangerous offender classification. See Tenn. Code Ann. § 40-35-115(b)(4); Pollard, 432 S.W.3d at 863 (quoting Wilkerson, 905 S.W.2d at 938). Pollard explains:

Proof that an offender's behavior indicated little or no regard for human life and no hesitation about committing a crime in which the risk to human life was high, is proof that the offender is a dangerous offender, but it may not be sufficient to sustain consecutive sentences. Every offender convicted of two or more dangerous crimes is not a dangerous offender subject to consecutive sentences; consequently, the provisions of [s]ection 40-35-115 cannot be read in isolation from the other provisions of the Act. The proof must also establish that the terms imposed are reasonably related to the severity of the offenses committed and are necessary in order to protect the public from further criminal acts by the offender. In addition, the Sentencing Reform Act [of 1989] requires the application of the sentencing principles set forth in the Act applicable in all cases. The Act requires a principled justification for every sentence, including, of course, consecutive sentences.

Additionally, when imposing consecutive sentences, the court must still consider the general sentencing principles that each sentence imposed shall be "justly deserved in relation to the seriousness of the offense," "no greater than that deserved for the offense committed," and "the least severe measure necessary to achieve the purposes for which the sentence is imposed." Tenn. Code Ann. §§ 40-35-102(1), -103(2), -103(4); State v. Imfield, 70 S.W.3d 698, 708 (Tenn. 2002).

We agree with the Defendant and conclude that the trial court did not explicitly state the Wilkerson factors. See Wilkerson, 905 S.W.2d at 939. However, upon our de novo review, we conclude that consecutive sentencing is appropriate given the Defendant's extensive record of criminal activity consisting of the present eleven felony convictions. See Tenn. Code Ann. § 40-35-115(b)(2); State v. Richardson, No. W2016-00174-CCA-R3-CD, 2017 WL 401368, at *9 (Tenn. Crim. App. Jan. 27, 2017) (finding that the trial court did not abuse its discretion in imposing consecutive sentencing because the trial court could have applied the extensive criminal history factor, even though it did not), perm. app. denied (Tenn. May 24, 2017); State v. Branham, 501 S.W.3d 577, 596 (Tenn. Crim. App. 2016) ("[C]urrent offenses may be used in determining criminal history for the purposes of consecutive sentencing.") (internal citations omitted)). We, therefore, affirm the imposition of partial consecutive sentencing in this case. The Defendant is not entitled to relief.

## CONCLUSION

We acknowledge that the counts in the indictment were renumbered, that the original count five was dismissed, and that count six was renumbered and submitted to the jury as count five. We therefore remand counts ten, eleven, twelve, sixteen, seventeen, and nineteen, as shown in the above chart, for entry of corrected judgments to reflect they are

to be served concurrently with count six.  In all other respects, we affirm the judgments of the trial court.

_____
CAMILLE R. MCMULLEN, PRESIDING JUDGE